THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY M. POOLE, Defendant-Appellant.

Fourth District    No. 4—83—0471

Opinion filed April 4, 1984.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Kevin T. McClain, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

After a jury trial, defendant Jerry Poole was adjudged guilty of the offense of residential burglary. (Ill. Rev. Stat. 1981, ch. 38, par. 19—3.) Upon consideration of his criminal record, defendant was sentenced to nine years' imprisonment. Defendant appeals from the judgment of the circuit court of McLean County. We affirm.

Defendant raises two issues on appeal: (1) whether the trial court erred in denying his motion under Supreme Court Rule 412(h) (87 Ill. 2d R. 412(h)), wherein he sought a court order permitting defense counsel access to the bedroom of the identifying witness for the purpose of taking photographs of the scene at night; and (2) whether the trial court erred in denying his motion *in limine* to restrict the testimony of a witness regarding the circumstances of defendant's appearances at her home during the hours preceding the charged burglary.

The evidence introduced at trial tended to show that the Gary Wilcox residence in Bloomington was burglarized during the early morning hours of October 16, 1982. Mr. Wilcox retired for the night shortly after 2 a.m. Around 3:20 a.m., he was awakened by the screams of his 10-year-old daughter, who thereafter entered his bedroom yelling that someone was trying to rape her. Both Mr. Wilcox and his oldest son entered the hallway of the one-story home, pausing momentarily, and heard the backdoor in the kitchen slam. Mrs. Wilcox called the police. Family members went to dress but discovered their pants were not in their respective rooms. The parents' pants and those of the oldest son were found in a pile in the living room. The men's wallets and Mr. Wilcox' keys were removed. Mrs. Wilcox' watch was taken from the kitchen, Mr. Wilcox' cigarettes and cigarette lighter were gone from his bedroom, two tool boxes were removed from the house to the backyard, and a storm window for the parents' bedroom was found in a neighbor's yard.

The 10-year-old daughter was the only family member who saw the intruder. She testified she was awakened by a man rubbing her arm from her elbow to her shoulder. As she sat up, he came toward her with a white towel wrapped around his hands. She began kicking him and, as he fell back against her closet doors, she ran from the room. The 10-year-old said she began screaming as soon as she was awakened by the stranger. She described the intruder as a black man with short hair and said she best remembered his hair, eyes and beard.

The 10-year-old was taken to the Bloomington police department the same morning to look at photographs. Shown a five-photo array, she examined each photo and chose that of the defendant, whom she also identified at trial.

Family members described the size and layout of rooms in the Wilcox home and the nighttime lighting of the 10-year-old's bedroom. The girl's room picked up light from the fluorescent lighting in the bathroom across the hall and from an outside streetlight and parking lot vapor light. The oldest Wilcox boy testified that he had been unable to sleep in this room because of the amount of illumination it received. Testimony was adduced on the location of outside lights relative to the room and on the size and location of trees which might block or filter the entry of light.

Elaine Williams, defendant's mother-in-law, testified that she lived at 901 East Walnut Street in Bloomington—several blocks from the Wilcox residence. Her daughter Sandra, defendant's estranged wife, was living with her. She testified that as she left her home on October 15 at about 10:10 p.m., she saw defendant sitting on the curb in front of her home with a bottle of wine. Ivan Thomas was speaking to her younger daughter Sharon and had been told to leave by midnight. When Mrs. Williams returned home between 1 and 1:30 a.m., she saw defendant, Mr. Thomas, and Sharon on her porch. She told the men to leave and called the police. Defendant had been drinking pretty heavily by this time. Defendant left but, before police arrived, telephoned for his wife. Mrs. Williams hung up on him.

Mrs. Williams remained in her living room watching television as she was aware that if defendant tried to get into her house she would not hear him from her bedroom. At about 2 or 2:30 a.m., she heard noise at her door. Upon investigation, she saw defendant run from her porch. He wore a belted, blue suede coat which her daughter gave him several years earlier. Defendant previously lived at her house but was no longer welcome. Although she did not see his face, she said she could identify defendant from the back. Mrs. Williams further stated that at 7:30 a.m. on October 16, defendant telephoned for his wife and inquired what time he tried to get into her house the previous night.

On defendant's behalf, Francis Poston and Randall Thompson testified they were with defendant on the evening of October 15 and witnessed his consumption of alcoholic beverages. Thompson said he shared with defendant three half-pint bottles of gin and a six-pack of beer, leaving defendant between 10 and 11 p.m. with Ivan Thomas.

Lori Ann Hursey, defendant's sister, testified that defendant and another brother resided with her and her children in her Bloomington

apartment during October 1982. Neither brother had a key to her apartment and she required them to knock at her kitchen door before 3 a.m. in order to stay with her. She said defendant had not stayed out all night during the time he stayed with her. She said defendant returned to her apartment in a drunken condition at 2:55 a.m. on October 16. She went upstairs to bed at about 3:20 a.m. while defendant was preparing to sleep on the living room couch. She left her bedroom door open and heard no noises during the night. She got up around 6 a.m. with her three-month-old baby and saw defendant sleeping on the couch.

The jury returned a guilty verdict. Defendant was sentenced on June 8, 1983. This appeal followed.

■ Defendant's first argument on appeal is that the trial court erred in denying his motion under Supreme Court Rule 412(h) (87 Ill. 2d R. 412(h)), requesting a court order permitting his counsel access to the bedroom of the identifying witness for the purpose of taking photographs at night. The motion was filed and argued on April 8, 1983, several weeks before trial. The State represented to the court that the Wilcox family would object to the invasion of their privacy and, as a matter of materiality, that the bedroom had been repainted and the furniture moved. The State contended that the defendant had not sufficiently justified discretionary disclosure under Supreme Court Rule 412(h) and that, as in any case where darkness might hinder identification, the primary quality of which defendant sought disclosure was lack of lighting. Defense counsel stated that the express reason he wanted the photographs was so the jury could make the determination of whether there was sufficient lighting in order for a witness to make an identification. The State argued it would be near to impossible for a photograph to duplicate conditions existing at the time of the offense so as to truly and accurately depict what Becky Wilcox saw; and, therefore, that any photographs would mislead rather than help the jury. As defense counsel provided no authority in support of his request for this order against the private party, Judge Dearborn denied the motion as not within the authority of the circuit court.

On appeal, defendant argues essentially that his constitutional right to present a defense (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038) supports his right to compel development of such evidence for use at trial. Defendant further maintains in reply brief and argument that the circuit court has authority to enter such an order under section 25 of "An Act relating to the circuit courts." Ill. Rev. Stat. 1981, ch. 37, par. 72.25.

The State contends that defendant has waived this argument by

failure to include the issue in his post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Given the novel issue presented in this case, in our discretion we decline to consider waiver and will deal with the issue on its merits. We need not decide the trial court's authority to enter an order against a private party allowing defense counsel to photograph a crime scene, since in this case denial of the motion on its merits would not have been an abuse of discretion.

We first dispose of defendant's contention that the test enunciated by the Supreme Court in *United States v. Nixon* (1974), 418 U.S. 683, 699-700, 41 L. Ed. 2d 1039, 1059, 94 S. Ct. 3090, 3103, for issuance of a *subpoena duces tecum* is logically applicable to the order sought as it similarly involved subordination of a privacy interest to a defendant's interest in presenting a defense. The flaw in this analogy is that the issuance of a *subpoena duces tecum* applies to evidence in being—to tangible items theoretically under the control of the party against whom the order is directed—and not to the creation of evidence.

Second, neither do we find compelling defendant's argument that dissimilarities between conditions bearing on light in the bedroom at the time of the charged offense and the time of photographing should be argued before the jury. There is authority supporting the exclusion of photographs which (1) could reflect upon the ability of a witness to see a crime and (2) were taken under circumstances sufficiently different from those existing when the witness allegedly viewed the crime and which might, therefore, mislead rather than assist the jury. (*People v. Rolon* (1979), 71 Ill. App. 3d 746, 390 N.E.2d 107; *People v. Schwing* (1971), 133 Ill. App. 2d 100, 272 N.E.2d 779.) As the State pointed out, many factors bear on differences in lighting conditions in the bedroom, including weather and environmental conditions and the fullness of the moon. Moreover, there was no showing that a photograph could be taken which would depict nighttime lighting conditions.

Third, defense counsel specifically sought to capture in such photographs the particular level of light present in the room at the time of the incident—highly evanescent evidence. Further, it is common knowledge that the ability of the human eye to discern objects at different light levels and to adjust to lower light levels varies from person to person. This particular quality could not be added to any photographs taken. Finally, because the photographs were sought for the particular purpose of impeaching the 10-year-old's ability to identify the intruder in her bedroom, photographic evidence could properly be excluded in this case.

Fourth, we do not find defendant's citation of cases holding the trial court did not abuse its discretion by denying a jury viewing of the

crime scene (*People v. Durso* (1968), 40 Ill. 2d 242, 239 N.E.2d 842, *cert. denied* (1969), 393 U.S. 1111, 21 L. Ed. 2d 807, 89 S. Ct. 923; *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert. dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408; *People v. Jarosiewicz* (1977), 55 Ill. App. 3d 1057, 371 N.E.2d 949; *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247) persuasive, although in each case models or photographs were in evidence in addition to testimonial descriptions of the crime scene. No cases were cited, and we know of none, wherein a trial judge was *required* to permit a jury viewing of the crime scene despite testimonial evidence providing description. Defendant made no request that the jury view the bedroom of the identifying witness at night.

■ We next consider defendant's argument that the trial court erred in denying his motion *in limine* to restrict the testimony of Elaine Williams regarding the circumstances of his appearances at her home during the hours preceding the charged burglary. Defense counsel, in arguing the motion, contended that Williams should be allowed to testify she saw defendant at 2:30 a.m. and explain her recognition of defendant. Counsel was concerned, however, that Williams' testimony should not contain any expression of her opinion that defendant was attempting to break into her home or make an unauthorized entry. Judge Dearborn did not agree that the jury would infer a break-in, since defendant's estranged wife was staying at the residence.

We agree. Moreover, were the testimony considered to be evidence of other crimes, such evidence is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Williams' testimony tended to show defendant's presence in the vicinity of the offense less than an hour before its occurrence. The State's characterization in closing argument that defendant had been "causing trouble" at the Williams' residence in the preceding hours does not change our view. Finally, in view of the identification testimony, any error in this regard may be deemed harmless. See *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.

Affirmed.

MILLS, P.J., and MILLER, J., concur.