## Richmond
DOUGLAS LEE HENSHAW

v.

COMMONWEALTH OF VIRGINIA

No. 2035-92-2

Decided December 6, 1994

COUNSEL

David C. Dickey, for appellant.

Leah A. Darron, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**COLE, S.J.**—The appellant, Douglas Lee Henshaw, was convicted of voluntary manslaughter in a jury trial and was sentenced to ten years in the penitentiary. In two motions, he requested access to the private residence of Clay Dabney Snow for the purpose of in-

specting, photographing, and taking measurements of the purported crime scene. The motions were denied. The trial court erred in denying the appellant access to the crime scene for these purposes; however, we find the error to have been harmless.

On appeal, the only issue appellant raises is whether the court had a duty under the mandate of Article I, Section 8 of the Virginia Constitution, upon a proper showing, either under its general authority or under the authority of Code § 19.2-52 *et seq.*, to allow defense counsel to examine the crime scene in the presence of his client and to make photographs and measurements for use at trial.

On March 12, 1992, prior to trial, appellant filed his first motion for "discovery" "pursuant to Rule 3A:11," the "Due Process Clause of the Fifth Amendment," and Article I, § 8 of the Virginia Constitution "as explicated in the cases of *Brady v. Maryland*, 373 U.S. 83 (1963); *Stover v. Commonwealth*, 211 Va. 789, 180 S.E.2d 509 (1971); and *Cox v. Commonwealth*, 227 Va. 324, 315 S.E.2d 228 (1984)." Appellant sought, *inter alia*, "an [o]rder requiring the attorney for the Commonwealth to permit the accused to enter upon and examine the premises which are alleged to be the scene of the crime," namely, Snow's house. On June 7, 1992, the appellant filed another "discovery" motion requesting a search warrant and citing as authority therefor Chapter 5 of Title 19.2 of the Code of Virginia.

Two hearings were held on the "discovery" motions. The testimony disclosed that on December 14, 1991, Shirley Gallihugh, John Knight, and James Crawford were visitors in Snow's home. Crawford and Snow had been drinking beer. At approximately 4:00 p.m., the appellant arrived at Snow's home. According to Snow's testimony, appellant brought with him a half-gallon jug of moonshine whiskey. Snow, Crawford, and Henshaw took several drinks of the whiskey.

Knight and Gallihugh left Snow's home by 5:30 p.m. During the afternoon some petty arguments and disagreements occurred between appellant and Crawford. Shortly after 5:30 p.m., Snow went outside to get firewood. When he returned, he sat in the living room with the appellant and Crawford. It was a small room with no more than five feet separating the three men.

Snow testified that he paid no attention to the conversation between the appellant and Crawford, but about five minutes later, one called the other a "damn liar." The appellant and Crawford stood up and moved toward each other. Snow stood and got between the two men. With his face in the appellant's chest, Snow wrapped his arms around appellant's waist to prevent violence. Snow felt Crawford behind him, and all three men started moving sideways toward the bed. Snow then heard gunfire and turned to see Crawford take three to four steps toward the dining room door before going down to his right knee and collapsing on his side on the floor. Neither man touched Crawford or went near his body before the police arrived.

The appellant admitted shooting Crawford but claimed he did so in self-defense. He testified that earlier, he had seen Crawford with a handgun. He stated that Crawford jumped on top of him and choked him. When he saw Crawford reach for his pocket, appellant thought Crawford was reaching for the gun. Appellant then shot Crawford.

Before trial, the Commonwealth's attorney furnished the appellant all the photographs of the crime scene in the Commonwealth's possession. At a hearing upon the "discovery" motions, defense counsel argued that the Commonwealth's photographs did not afford him an adequate means of understanding the crime scene and determining the location and relationship between the objects of furniture in Snow's house. He claimed he needed to know the actual size of the room and the adjoining rooms in order to understand the explanation of events given to him by the appellant. He wanted permission to take a camera to the scene and photograph those things he deemed necessary and to take measurements in order to determine the distances between objects and people. He advised the court that it would be difficult for him to examine and cross-examine witnesses about the details of events that occurred at a location with which he was unfamiliar and which he was not permitted to view.

The Commonwealth's attorney argued that because discovery is not permitted in criminal cases, the court had no authority to permit inspection of the premises of a third person. He contended that Rule 3A:11 only provides for discovery of matters within the control of the parties, and Snow's residence was not under the Commonwealth's control. The Commonwealth's attorney advised

the court that he asked Snow to permit the inspection, but Snow "doesn't want people coming down to his property and doing this." Defense counsel acknowledged that he, too, had asked Snow without success for permission to view the premises.

We first address the question whether a defendant is entitled to inspect, photograph, and take measurements of the crime scene under Rule 3A:11(b)(2) when the premises are a private residence. The Rule, in pertinent part, states:

Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, *that are within the possession, custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.*

(Emphasis added).

■ "There is no general constitutional right to discovery in a criminal case." *Strickler v. Commonwealth*, 241 Va. 482, 490-91, 404 S.E.2d 227, 233, *cert. denied*, 502 U.S. 944 (1991). However, Rule 3A:11(b)(2) provides for limited pretrial discovery by an accused in a felony case. *Guba v. Commonwealth*, 9 Va. App. 114, 118, 383 S.E.2d 764, 767 (1989). The language of the Rule permits discovery only of items "that are within the possession, custody, or control of the Commonwealth." Snow's residence was not in the possession, custody, or control of the Commonwealth. Therefore, Rule 3A:11(b)(2) does not afford the appellant a basis to inspect, photograph, or measure Snow's private residence. Thus, the trial judge did not err in holding that Rule 3A:11(b)(2) was not available to the appellant.

The appellant next contended that he was entitled to a search warrant under Chapter 5 of Title 19.2 of the Code. He based this claim on Article I, Section 8 of the Constitution of Virginia, which he argued gave him the same right as the Commonwealth to call for evidence in his behalf. This argument is without merit.

[T]he . . . Constitution and article I, section 10 of the Virginia Constitution offer protection against a specific type of

government action—action which is defined as a search. If the government activity is classified as a non-search, then "the law doesn't give a constitutional damn" about non-compliance with the fourth amendment or article 1, section 10. The traditional definition of a search lists three requirements: (1) physical trespass into a constitutionally protected area, (2) seizure of a tangible item belonging to the defendant, and (3) a trespass and seizure pursuant to a criminal investigation by the government.

Ronald J. Bacigal, *Virginia Criminal Procedure* § 4-2 (2d ed. 1989).

█ Code § 19.2-53 provides in pertinent part that search warrants may be issued to search for the following specified items:

(1) Weapons or other objects used in the commission of crime;
(2) Articles or things the sale or possession of which is unlawful;
(3) Stolen property or the fruits of any crime;
(4) Any object, thing, or person, including without limitation, documents, books, papers, records or body fluids, constituting evidence of the commission of crime.

Code § 19.2-53 does not authorize a search warrant to be issued for a criminal defendant for the purpose of discovery. The trial court did not err in refusing to issue a search warrant to permit the appellant to inspect, photograph, and measure Snow's private residence.

█ We next address the question whether the defendant is entitled to inspect Snow's residence prior to trial under Article I, Section 8 of the Constitution of Virginia that provides, in pertinent part, "[t]hat in criminal prosecutions a man hath a right . . . to call for evidence in his favor." The constitution provides that this section is self-executing. The Supreme Court has said that "[t]his right is central to the proper functioning of the criminal justice system. It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense." *Massey v. Commonwealth*, 230 Va. 436, 442, 337 S.E.2d 754, 757 (1985).

We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against [a] . . . defendant without making certain that he has access to the raw materials integral to the building of an effective defense.

*Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). "This . . . includes the right to interview material witnesses and to ascertain the truth," *Bobo v. Commonwealth*, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948), the right to prepare for trial, and the right to present an adequate defense, *Gilchrist v. Commonwealth*, 227 Va. 540, 547, 317 S.E.2d 784, 787 (1984). "These rights lie at the heart of a fair trial, and when they are abridged, an accused is denied due process." *Id.*

■ In support of his Virginia constitutional due process argument, the appellant relied upon the case of *Cox v. Commonwealth*, 227 Va. 324, 315 S.E.2d 228 (1984). The Supreme Court said in *Cox* that in our adversarial system of criminal justice, "all relevant facts must be available to both the prosecution and the defense in order to preserve the system's integrity." *Id.* at 328, 315 S.E.2d at 230. The Court quoted with approval from *United States v. Nixon*, 418 U.S. 683, 709 (1974), dealing with federal constitutional due process:

The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the *rules of evidence*. To insure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

*Cox*, 227 Va. at 328, 315 S.E.2d at 230. *See also Lomax v. Commonwealth*, 228 Va. 168, 319 S.E.2d 763 (1984); *Gilchrist*, 227 Va. at 547, 317 S.E.2d at 787; *Bellfield v. Commonwealth*, 215 Va. 303, 208 S.E.2d 771 (1974), *cert. denied*, 420 U.S. 965 (1975). The right "to call for evidence" in one's defense is an "unqualified" right, which is restricted only by whether "a substantial basis for claiming materiality exists." *Cox*, 227 Va. at 328, 315 S.E.2d at 230.

While no Virginia statute, rule, or case law has specifically held that the right of a criminal defendant to call for evidence in his behalf includes the right to view, inspect, photograph, or measure the crime scene, decisions from other jurisdictions are informative. The North Carolina Supreme Court held that the trial court's denial of a defendant's motion to view the crime scene was error because the lack of such evidence denied the defendant the fundamental fairness he deserved under due process of law. *State v. Brown*, 293 S.E.2d 569, 578 (N.C. 1982).[1] In *People v. Nicholas*, 157 Misc. 2d 947, 599 N.Y.S.2d 779 (1993), the accused was charged with attempted murder of his former wife. The court found that the accused may be entitled to inspect the victim's apartment because "[t]he constitutional right to compulsory process gives a defendant a right to compel discovery from a private third party if justification exists which would outweigh the rights and legitimate interests of the third party." *Id.* at 948, 599 N.Y.S.2d at 780 (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)). However, the court held:

Unless defense counsel can make a prima facie showing how his proposed inspection and observation would be relevant and material to his defense, the defendant's right to prepare his defense cannot outweigh the victim's constitutional right to privacy. So far, the defendant has only supported his demand for a court order authorizing an invasion of the victim's privacy with a speculative showing. He has not alleged that his proposed inspection would yield any information any different from that already received from the photographs and crime scene reports furnished.

*Id.* at 951, 599 N.Y.S.2d at 782. *See also State v. Lee*, 461 N.W.2d 245 (Minn. Ct. App. 1990) (broadly interpreting criminal rule of discovery to allow a highly regulated and carefully circumscribed inspection of a third party residence, the victim's home). *But see State ex rel. Beach v. Norblad*, 308 Or. 429, 781 P.2d 349 (1989) (the Oregon Supreme Court refused defendant access to victim's home no longer under the control of the district

---

[1] However, because there was overwhelming evidence of defendant's guilt, the Court found that the trial court's error, though constitutional, was harmless beyond a reasonable doubt. *Brown*, 293 S.E.2d at 578-79, *aff'd sub nom. Brown v. Dixon*, 891 F.2d 490, 495 (4th Cir. 1989) (affirming during habeas review state supreme court's harmless error decision), *cert. denied*, 495 U.S. 953 (1990).

attorney's office to permit a criminalist to observe the interior of the alleged crime scene and to place in their original position in the premises a number of items of physical evidence); *Bullen v. Superior Court of Sacramento*, 204 Cal. App. 3d 22, 251 Cal. Rptr. 32 (1988) (defendant's showing of "good cause" or "plausible justification" was conclusional and inadequate to support judicially compelled access to the home of victim's widow which would deprive her of her right to privacy in and freedom from unwanted intrusion into her home); *People v. Poole*, 123 Ill. App. 3d 375, 462 N.E.2d 810 (1984) (defense not allowed to photograph the identifying witness's bedroom at night to see if the complaining witness (a child) could have seen defendant because the photo would not accurately depict the lighting conditions at time of crime).

█ We hold that the due process rights of Article I, Section 8 of the Virginia Constitution give a criminal defendant a right to view, photograph, and take measurements of the crime scene, provided that the defendant makes a showing that a substantial basis exists for claiming that the proposed inspection and observation will enable the defendant to obtain evidence relevant and material to his defense or to be able to meaningfully defend himself. It must be kept in mind, however, that

> [p]hysical conditions of the premises where the homicide is alleged to have occurred are generally relevant. . . . [I]t naturally follows that any evidence which tends to show the manner in which the act was committed is competent evidence.

*Mercer v. Commonwealth*, 150 Va. 588, 600-01, 142 S.E. 369, 372-73 (1928).

█ If an accused establishes that inspecting, photographing, or measuring the crime scene is relevant and material, he is entitled to access, subject to such reasonable limitations and restrictions as the trial judge may impose, unless due to special circumstances the private citizen's constitutional right to privacy outweighs the accused's right to view or inspect the premises. Upon a *prima facie* showing of relevance, the trial judge shall order access for observation and inspection, subject to such reasonable restrictions and limitations as the court determines necessary in its sound judicial discretion. *See* Code § 19.2-264.1 (codifying trial court's

discretion in allowing a view during trial); *see also Litton v. Commonwealth*, 101 Va. 833, 44 S.E. 923 (1903) (discussing the history of jury views and tracing the power of courts to order views to the reign of King George IV).

In support of his request to view the crime scene at Snow's residence, the appellant asked for an order allowing him and his attorney to inspect, photograph, and measure the residence. The trial judge inquired of appellant's counsel what he desired to do besides "go down there and look." Defense counsel stated that he would like to take a camera and, if he saw something that was not shown in the Commonwealth's photographs, he would like to photograph it. He further informed the trial judge that he wanted to measure distances between objects and to acclimate himself to the crime scene to be able to examine and cross-examine the witnesses and to understand the appellant's account of events. Other than Snow's desire that no one be allowed access to his home, no special circumstances were shown that would preclude Snow being required to make the premises available for inspection.

We find that the appellant established that viewing the crime scene to photograph and measure the premises was relevant and material to his being able to produce evidence in his behalf, to his ability to cross-examine Clay Snow, and to his claim of self-defense. Thus, the trial court erred in refusing to order that Clay Snow, under such reasonable conditions as the court deemed appropriate, permit entry by defense counsel for purposes of photographing and measuring the premises.

Only when trial error had no effect upon the outcome of the trial can the error have caused no prejudice and be harmless. *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (en banc). Here, the Commonwealth introduced five photographs of the premises into evidence. Every trial error is presumed prejudicial. Three of the photographs introduced into evidence by the Commonwealth showed a limited, but relevant, view of the crime scene; two of them gave full views of the living room from opposite ends, and one of the photos showed the dining room area. In addition, a poster-size diagram was admitted in evidence and used throughout the trial. Clay Snow pointed out to the jury the location of the furniture in the room and the location of the people without objection from appellant. The poster was not drawn to scale; it was a rough sketch of the

living room. However, defense counsel extensively cross-examined Snow about the location of the furniture. Deputy Don Conley was fully cross-examined about the position of the furniture and measurements between the various items in the room. The appellant was present in Snow's living room for a considerable period of time on the day of the crime. He knew the location of the parties in the room and their positions in relation to the furnishings.

Based upon our review of the record, we find that the appellant was fully able to present his evidence through the Commonwealth's photographs that were made available, the diagram of the room, and the testimony of witnesses. He was able to show the crime scene and to explain fully to the jury the location of the parties in relation to one another and to the furnishings. Defense counsel was not hampered in his ability to examine or cross-examine witnesses. There is no reasonable probability that, had the appellant been allowed to inspect, photograph, or measure Snow's residence, the result of the proceeding would have been different. The error in denying the appellant access to the crime scene and the opportunity to photograph and measure it was harmless. Therefore, we affirm the appellant's conviction.

*Affirmed.*

Moon, C.J., and Coleman, J., concurred.