COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Kelsey and McClanahan
Argued at Richmond, Virginia


W. FRANK SMART, JR.
                                              MEMORANDUM OPINION[*] BY
v.      Record No. 1835-06-2               JUDGE ELIZABETH A. McCLANAHAN
                                                    AUGUST 28, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
Daniel R. Bouton, Judge

    Mark J. Yeager for appellant.

    Josephine F. Whalen, Assistant Attorney General II (Robert F.
    McDonnell, Attorney General, on brief), for appellee.


    W. Frank Smart, Jr. appeals his bench trial conviction for rape in violation of Code

§ 18.2-61(A)(iii). He argues the evidence was insufficient to sustain his conviction and that the

trial court erred by denying his motion for discovery of a tape recording. Finding no error, we

affirm the trial court.

I. BACKGROUND

    Under settled principles, we review the evidence in the light most favorable to the

Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)

(citation omitted). Thus, we must "'discard the evidence of the accused in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

and all fair inferences to be drawn therefrom.'" Parks v. Commonwealth, 221 Va. 492, 498, 270

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954)) (emphasis omitted).

The victim, Smart's stepdaughter, who had lived with him since she was four, testified that Smart had sex with her in November of 2003 when she was twelve years old. On the day she was raped, the victim arrived home from school to find a note from her mother indicating she had left town to visit her sister. When Smart arrived, he went to the garage, returned with a videotape, and inserted it in the VCR. He then sat next to the victim on the couch and placed his hand on her knee. When the victim realized the video was "an adult sexual movie," she stated she did not want to watch it, but Smart insisted and told the victim to get on the floor. He then removed his pants and instructed her to remove her underwear. The victim complied with his instructions, and Smart then raped her as she protested and cried. Smart stated to the victim she "may not be ready for it but [her] body [was]." After raping the victim, Smart went to the bathroom, returned with a wet washcloth and told the victim to clean herself. After getting dressed, the victim returned to the couch to watch television with Smart, and before she went to bed, hugged and kissed him goodnight. Smart told her not to tell anyone about the rape or he would lose his job and they would lose everything.

The victim spent the next night with her brother and sister-in-law, with whom she was leaving the next morning for a weekend beach trip. The victim's sister-in-law testified the victim "was really quiet" and "didn't seem herself." She also testified when they returned from their beach trip later than expected, Smart was "very irate, very upset."

The victim first reported the November 2003 rape to her sister-in-law in February 2005, after which she told her mother and the police about the incident. She then later reported subsequent incidents about Smart sexually abusing her.[1]

After the November 2003 incident, Smart told the victim he "had taken something to make himself harder." The victim also testified she saw a scar on Smart's penis during one of these incidents, although she acknowledged he had previously spoken about his scar to her and her mother. The victim also testified that sometime between November 2003 and February 2005, she told Smart her period was late. Smart sometimes used a condom, but not always. After her mother had left for work one morning before school, Smart gave the victim a pregnancy test and instructed her how to use it. The test indicated she was not pregnant. The victim's mother subsequently found a home pregnancy test and an unused condom in the house.

The victim's sister-in-law testified Smart was "increasingly protective . . . almost to the point of obsession." He controlled the clothes she wore and insisted she wear only plain white cotton underwear. The victim's boyfriend testified Smart stated the victim was a "black widow" who could get him killed, then showed him a bullet and told him to spread the word to other boys at school.

Prior to trial, Smart filed a motion for discovery requesting copies of his recording of the victim's telephone conversation with her boyfriend, which Smart taped without the victim's knowledge. Smart maintained that the taped conversation showed the victim's motive to fabricate her complaint about the rape. The court reviewed the recording under seal and noted

---

[1] Smart was indicted for six counts of rape, two counts of forcible sodomy, two counts of object sexual penetration, one count of indecent liberties, and two counts of wiretapping. At trial, after the conclusion of the Commonwealth's evidence, Smart moved to strike the entirety of the Commonwealth's case. The trial court granted Smart's motion as to two counts of rape, one count of object sexual penetration, both counts of forcible sodomy, and the one count of indecent liberties. At the conclusion of all the evidence, Smart renewed his motion to strike. The trial court granted the motion as to all of the remaining charges except that of the first rape.

"without revealing the specific contents [of the tape], because it remains under seal, that there's absolutely no reference to the defendant or to this case on the tape . . . ." Finding the tape contained no exculpatory evidence, the court denied Smart's motion. The trial court found Smart guilty of rape and sentenced him to 40 years in prison, with 25 years suspended.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Smart argues the Commonwealth's evidence was insufficient to sustain his conviction for rape. On appeal, when considering a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Stated otherwise, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original; citation and internal quotation marks omitted). Rather, "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Smart contends the victim's testimony was unworthy of belief because of the delay in reporting the rape, that her testimony concerning her behavior after being raped was inherently incredible and contrary to human experience, and that the victim lied about being raped out of anger at Smart for taping her telephone conversations.

- 4 -

"[A] conviction for rape . . . may be sustained solely upon the uncorroborated testimony of the victim." Wilson v. Commonwealth, 46 Va. App. 73, 87-88, 615 S.E.2d 500, 507 (2005) (citing Garland v. Commonwealth, 8 Va. App. 189, 191-93, 379 S.E.2d 146, 147 (1989)). "[I]t is not sufficient to warrant a verdict of guilty beyond a reasonable doubt if the evidence is inherently incredible, or so contrary to human experience or to usual human behavior as to render it unworthy of belief." Willis & Bell v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 813 (1977) (citations omitted). Furthermore, it is well understood that the "only time requirement is that the complaint have been made without a delay *which is unexplained or is inconsistent with the occurrence of the offense*." Woodard v. Commonwealth, 19 Va. App. 24, 27, 448 S.E.2d 328, 330 (1994) (citation and internal quotation marks omitted); see also Willis & Bell, 218 Va. at 563, 238 S.E.2d at 813 (where the Virginia Supreme Court stated "[t]he failure to report an alleged rape by force and violence for an unreasonable period after the incident occurred casts suspicion and doubt on the truthfulness of the story of a prosecutrix *unless there is a credible explanation for such a delay*" (emphasis added)).

The trial court found the victim's testimony specific, credible, and corroborated by detailed testimony and rejected Smart's claim the victim had a sufficient motive to fabricate the charges. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998); see Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).

Smart also argues the victim's testimony about her behavior after the alleged rape – getting dressed, returning to the couch to watch television, and later hugging and kissing Smart goodnight before she went to bed – is inherently "incredible or contrary to human experience or to [sic] unusual behavior." We reject this argument. The victim testified she was fearful of Smart. The victim testified, and her mother conceded, that Smart kept guns in the house. The victim was completely alone with Smart, and her mother was out of town. Given these circumstances, her reaction was not "inherently incredible or so contrary to human experience or to usual human behavior." Willis & Bell, 218 Va. at 563, 238 S.E.2d at 813.

The victim's delay in reporting the rape was not "unexplained" or "inconsistent with the occurrence of the offense." "To the contrary, [the victim's] delay is explained by and completely consistent with the all too common circumstances surrounding sexual assault on minors – fear of disbelief by others and threat of further harm from the assailant." Woodard, 19 Va. App. at 28, 448 S.E.2d at 330. The victim, who was twelve years old when she was raped by her stepfather, lived with him and her mother. She testified she was afraid of Smart, shocked, embarrassed, and afraid of destroying her relationship with her mother. See Lindsey v. Commonwealth, 22 Va. App. 11, 14, 467 S.E.2d 824, 825 (1996) (affirming a trial judge's admission of a child's complaint made approximately two years after the alleged incident where child "had been too frightened to tell her mother about the incident"). As recognized by the trial court, those circumstances coupled with the victim's emotional and economic dependence on Smart, was sufficient to explain her delay.

The trial court was not plainly wrong in finding the evidence sufficient to convict Smart of rape.

<u>B. Denial of Discovery Motion</u>

On appeal, Smart argues the trial court violated the Sixth Amendment of the United States Constitution and Article I, Section 8 of the Virginia Constitution[2] by denying his discovery request to release the tape recording he made of a telephone conversation between the victim and her boyfriend. He contends on appeal, as he did at trial, that the taped conversation showed a motive for the victim to fabricate the rape charge against him. It is undisputed that Smart recorded the conversation at his home and knew the contents of the tape, which he summarized in his testimony at trial. Furthermore, the trial court reviewed the tape *in camera* and found that it contained no exculpatory evidence.

Assuming without deciding that the trial court erred when it denied Smart's motion for discovery of the tape recording, we hold that it was harmless. "In Virginia, constitutional error 'is harmless only when the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt."'" <u>Timbers v. Commonwealth</u>, 28 Va. App. 187, 201, 503 S.E.2d 233, 239 (1998) (quoting <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967))); <u>see</u> <u>Henshaw v. Commonwealth</u>, 19 Va. App. 338, 451 S.E.2d 415 (1994) (applying a harmless error analysis to a due process claim under Article I, Section 8 of the Virginia Constitution).

> "Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of

---

[2] The Sixth Amendment to the United States Constitution grants the right to "'"'process for obtaining witnesses in his favor.'"'" <u>Pollino v. Commonwealth</u>, 42 Va. App. 243, 251, 590 S.E.2d 621, 625 (2004) (quoting <u>Harris v. Commonwealth</u>, 33 Va. App. 290, 294, 533 S.E.2d 1, 3 (2000) (quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 326 (1998))). Article I, Section 8 of the Constitution of Virginia gives the defendant the right to "call for evidence in his favor," which includes the right to prepare for trial by procuring both testimonial and documentary evidence. <u>Cox v. Commonwealth</u>, 227 Va. 324, 328, 315 S.E.2d 228, 230 (1984).

> cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

At trial, the court was presented with ample evidence of any purported motive of the victim to fabricate the rape charge against Smart stemming from his recording of the victim's telephone conversation with her boyfriend. The victim, Smart, the victim's sister-in-law, and the captain of the Sheriff's Office, testified about such motives: the victim's fear of punishment, threat of disclosure to her mother, and interference in the relationship.

The victim testified she was confronted by Smart about the tape-recorded phone conversation with her boyfriend, was told her mother was going to hear the tape, and knew she was going to be in trouble with Smart. The victim also testified Smart asked her why she wanted to have sex with her boyfriend, upon which she became very scared and told Smart she had not had sex with her boyfriend.

Smart testified the victim's taped conversation with her boyfriend was "heavy in sexual content" and it led him "to believe that if sex had not already been tried it was imminent." Smart also testified that, as a result of the telephone conversation, he and the victim's mother told her they were going "to remove [her] cell phone," "keep her in home school where she would not have contact with [her boyfriend] on a daily basis, keep the recording device on the phone and . . . purchase and install covert cameras to watch the entries and exits to the house." The victim's sister-in-law testified that Smart asked her to seize the victim's cell phone, not allow her to speak to anyone, "bring her home because they were going to put cameras in the house and . . . discipline her severely." After the victim's mother listened to the tape recording, she became angry with the victim. The victim knew about her mother's anger when she reported the rape.

Michael LaCasse, captain of the Orange County Sheriff's Office, also testified that Smart told him he believed the victim had been having sex with another boy, that he taped her telephone calls, and "caught her on tape talking about or planning to have sex."

To the extent Smart contends that his counsel had a constitutional right to hear the tape recording so that counsel could "know the contents of such a tape," Smart made the tape in his own home, independently listened to the tape, reviewed it again when he played it for the victim's mother, and thus had knowledge of its contents. See Cherrix v. Commonwealth, 257 Va. 292, 302-03, 513 S.E.2d 642, 649 (1999) (citing Castillo v. Johnson, 141 F.3d 218, 223 (5th Cir. 1998)) (prosecution has no obligation to produce information already known to defense).

The trial court heard evidence from Smart, who taped the conversation and testified as to the contents of it, as did others. The contents of the tape would have been merely cumulative of the other evidence adduced at trial. The victim's testimony about her fear of punishment was corroborated by multiple witnesses and Smart himself. Furthermore, defense counsel had the ability to cross-examine the witnesses, the victim, and Smart on the material point of the victim's motive to fabricate. Any error by the trial court in denying the tape recording was harmless beyond a reasonable doubt.

### III. CONCLUSION

We hold sufficient evidence supports the trial court's conclusion that Smart committed rape against the victim. Furthermore, any error in denying Smart's discovery motion for the tape recording was harmless. We, therefore, affirm his conviction.

Affirmed.