COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


ALLEN LAMONT HARRIS
                                        OPINION BY
v.    Record No. 1933-99-2        JUDGE ROBERT J. HUMPHREYS
                                        AUGUST 29, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Robert W. Duling, Judge

            (Derek E. Leake; Taylor, Taylor & Taylor, on
            brief), for appellant.  Appellant submitting
            on brief.

            Linwood T. Wells, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Allen Lamont Harris appeals his convictions in a jury trial

for murder in the second degree and grand larceny.  He contends

the trial court erred (1) in instructing the jury following a

question by a juror regarding the failure of the parties to call

a particular individual as a witness, and (2) failing to impanel

a new jury for sentencing purposes when the jury recommended a

sentence greater than the statutory maximum which existed on the

date of the offense.  We find no error and for the reasons that

follow, affirm his convictions.

                          I.  Background

     On July 31, 1992, Jackson Burrell, Jr. was found dead in

his home by his father.  Burrell had been stabbed seven times.

Except for his socks, Burrell was unclothed.  An unwrapped condom was found in the hallway near the body.  There was no sign of forced entry.

Until just prior to his death, Burrell lived with Delon Moore.  Moore did not reside with Burrell at the time of his death, and Burrell had expressed to members of his family that he was afraid of Moore.  On the night before he died, Burrell told his mother to make sure his fire insurance was paid up because "they" might burn his house down.

The appellant ("Harris") was acquainted with Burrell and claimed that Burrell owed him money.  Barbara Richardson testified that she was a former girlfriend of Harris and that Harris told her, a few days after Burrell's murder, that he had gone to see Burrell to collect the debt and that Burrell had "come at him" with a knife so Harris took the knife away and stabbed Burrell.  Harris also told Richardson that after stabbing Burrell, he took Burrell's car and parked it on another street after taking out the radio and battery and disposing of the keys.

Burrell's Pontiac Grand Am was later recovered by the police.  A fingerprint belonging to Moore was found in the car. No fingerprints belonging to Harris were found.  In addition, swabs containing blood taken from Burrell's bathtub were analyzed through DNA testing and the DNA in the blood from the

-

bathtub was determined to be consistent with a mixture of the DNA of Harris and Burrell.

Harris was tried by a jury on May 25, 1999.  Moore was not called as a witness by either party.

Following jury instructions and closing arguments of counsel, a juror raised his hand and the court took his question in a sidebar conference.  The juror asked why Delon Moore was not called as a witness in the case.  After taking the question, the court instructed the juror to return to the jury box and the sidebar conference continued with counsel.  The prosecutor suggested that the question could not be answered because it went beyond the evidence.  Counsel for Harris responded by saying, "[W]e can't explain the question because it goes beyond the scope of the witnesses presented.  I think that would be more accurate."

The court then instructed the jury as follows:

> Ladies and gentlemen of the jury, one of the members of your jury has a question in regards [sic] to a matter that was not presented to you.  As you will see in your instructions - but I will tell you now – you are to decide the cases based on the law and the evidence that you have heard in this courtroom as respects to evidence presented and the law presented to you by way of the instructions and to not go outside of the evidence or speculate or conjure [sic] as to why or why not something was or was not presented to you.

Following this instruction, counsel for Harris requested another sidebar conference, objected to the instruction, and

suggested that the jury should be permitted to consider why Delon Moore was not called as a witness.  The trial court overruled the objection and declined to modify its instruction. The jury convicted Harris of murder in the second degree and the grand larceny of Burrell's car.

During the penalty phase of the trial, the jury was instructed, without objection by Harris, that the maximum penalty for second degree murder was forty years in the state penitentiary.  The jury subsequently recommended that Harris be sentenced to forty years on the charge of murder in the second degree and ten years on the charge of grand larceny.

Following the preparation of a pre-sentence report, a sentencing hearing was held on August 9, 1999.  During this hearing, the prosecutor advised the court that when the crime occurred in 1992, the maximum penalty prescribed by law for second degree murder was twenty years.[1]  The court then sentenced Harris to twenty years for murder in the second degree and ten years for grand larceny.

## II.  Instruction of the Jury

Harris cites Robinson v. Commonwealth, 165 Va. 876, 879, 183 S.E. 254, 256 (1935), as authority for his position that the court's instruction was erroneous.  Harris' reliance on Robinson

---

[1] Effective July 1, 1993, the General Assembly increased the maximum penalty for murder in the second degree from twenty years imprisonment to forty years.

-

is misplaced.  In Robinson, the Supreme Court of Virginia considered whether, in a perjury trial, it was error for the prosecutor to comment in closing argument on the failure of the defendant to call a witness who was present in court at the hearing when the perjury occurred and who, according to the defendant, could have corroborated his testimony.  The Supreme Court held this "was a circumstance to be considered by the jury, and was the legitimate subject of comment by the Commonwealth's Attorney."  Id. at 881, 183 S.E. at 256.

Here, there is no suggestion by Harris that Moore, if called as a witness by the Commonwealth, would have given testimony contradicting the Commonwealth's case.  Indeed, in making his objection, Harris failed to proffer what testimony Moore would have given.

We have an adversary system of justice and while the Commonwealth may call to testify such witnesses as it deems necessary and appropriate to prove its case, likewise, "[t]he Sixth Amendment provides that 'the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor.'  Because this right 'is an essential attribute of the adversary system itself,' we have repeatedly stated that few rights 'are more fundamental than that of an accused to present witnesses in his own defense.'"  United States v. Scheffer, 523 U.S. 303, 326 (1998).  Thus, if Moore had evidence that was helpful to the defense, Harris could have availed himself of the

-

court's power to produce Moore and compel him to testify, subject only to Moore's exercise of his own constitutional rights or recognized privilege.  Because neither Harris nor the Commonwealth called Moore, we must consider whether the jury should have been specifically instructed on what legal conclusions they might draw from the failure of either party to produce a witness who might conceivably have been called by either or both of the parties.

In Russell v. Commonwealth, 216 Va. 833, 223 S.E.2d 877 (1976), the Supreme Court of Virginia held:

> [I]t is one thing for this court to employ a judicial guideline in determining the sufficiency of evidence, or to say that a matter may be the legitimate subject of comment by counsel for one party or another, or to indicate that a circumstance may be considered by the trier of fact; it is quite another thing, however, for a trial court to instruct a jury that an adverse presumption arises from the failure of one or the other of the parties to a criminal proceeding to call a particular witness.

Id. at 836, 223 S.E.2d at 879.

In permitting juries to determine the facts, we expect and require them to limit their fact finding exercise to the evidence presented and any reasonable inferences they care to draw from that evidence.  The rationale behind this requirement is grounded in the presumption of innocence and ensures that the burden of proof remains with the prosecution.  See e.g., Hayden v. Commonwealth, 203 Va. 398, 124 S.E.2d 13 (1962), and Campbell

-

v. Commonwealth, 162 Va. 818, 174 S.E. 856 (1934).  We find that the trial court's instruction to the jury in response to the juror's question was consistent with this principle and was, therefore, not erroneous.

### III.  Sentencing

Harris acknowledges that he made no objection to the jury instruction relating to the maximum sentence the jury could recommend for second-degree murder.  Unless we invoke the "ends of justice" exception to Rule 5A:18, his assignment of error is procedurally barred.  See Clark v. Commonwealth, 30 Va. App. 406, 409-10, 517 S.E.2d 260, 261 (1999).  Because our holding in Dargan v. Commonwealth, 27 Va. App. 495, 500 S.E.2d 228 (1998), squarely resolves this identical issue, we decline to consider this assignment of error under the "ends of justice" exception to Rule 5A:18.[2]

Affirmed.

---

[2] In Dargan, a plurality of this Court held that "[a] trial court may correct a void or unlawful sentence at any time . . . . [As a consequence,] [a] court may impose a valid sentence in substitution for one that is void . . . [w]here the sentence imposed is in excess of that prescribed by law, that part of the sentence which is excessive is invalid.  A sentence in excess of one prescribed by law is not void ab initio because of the excess, but is good insofar as the power of the court extends, and is invalid only as to the excess."  Dargan, 27 Va. App. at 497-98, 500 S.E.2d at 229 (citations omitted).  In addition, here as in Dargan, the jury recommended the maximum sentence available in the instruction and the trial court reduced it to the maximum sentence allowable by law.  See id. at 499-500, 500 S.E.2d at 230 (Elder, J. concurring).

-