COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and Kelsey
Argued at Salem, Virginia


AMANZA JAMES POLLINO, S/K/A
 AMANZO JAMES POLLINO
                                                           OPINION BY
v.        Record No. 3041-02-3                  JUDGE D. ARTHUR KELSEY
                                                           JANUARY 13, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Charles B. Flannagan, III, Judge

J. Douglas Fleenor for appellant.

Paul C. Galanides, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief), for appellee.


On appeal, Amanza James Pollino argues that the trial court erred by not declaring a mistrial

after the prosecutor made improper statements during closing argument.  Finding that the

prosecutor's statements were not improper, we affirm.

I.

On appeal, we review the evidence in the light most favorable to the Commonwealth.

Kingsbur v. Commonwealth, 40 Va. App. 307, 308, 579 S.E.2d 357, 358 (2003).  That principle

requires us to discard the evidence of the accused in conflict with that of the Commonwealth and to

regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that

may be drawn therefrom.  Dugger v. Commonwealth, 40 Va. App. 586, 589, 580 S.E.2d 477, 479

(2003).

On November 9, 2001, Sergeant Darrell Duty and Officer Tim Sexton of the Bristol Police

Department arranged for Emma Rollins, a confidential informant, to make a controlled purchase of

crack cocaine. After providing a "body wire transmitter" and searching Rollins and her pickup truck, the officers followed Rollins until she entered an apartment complex in Bristol. There, Rollins parked her truck in a parking lot. Within a few minutes, a car driven by Pollino pulled up next to Rollins's vehicle. After a brief conversation between Pollino and Rollins, a passenger in Pollino's car, Pig Stout, exited the front passenger seat of the vehicle and walked to the other end of an adjacent apartment building. Rollins then got into Pollino's car and asked for "50 dollars worth of crack cocaine." After buying the drugs from Pollino, Rollins got back into her truck and drove away. Before she left, however, Pig Stout returned and got back into Pollino's vehicle. The entire encounter took between five to ten minutes.

Rollins met the officers a few minutes later and turned over the drugs she purchased from Pollino, which turned out to be .06 grams of crack cocaine. Pollino was arrested for possession with intent to distribute in violation of Code § 18.2-248(A).

At trial, Sergeant Duty and Rollins each gave a detailed description of the controlled buy and Pollino's subsequent arrest. Rollins also made clear that Stout accompanied Pollino to the parking lot and later got back into his vehicle after the transaction.

Pollino did not present any witnesses or evidence.

In his closing argument, Pollino's attorney explained to the jury: "We have no burden whatsoever in this case. We have no burden to produce any evidence. The burden's solely on the Commonwealth to prove guilt beyond a reasonable doubt." Pollino's counsel then went on to attack Rollins's testimony, claiming "Pollino wasn't there on November 9th to sell drugs to Ms. Rollins or anyone else." She "never spoke" to Pollino. "Not once." Pollino, his counsel asserted, is "not a drug dealer. He never sold to her. He never sold to anyone. Never. And that's crystal clear."[1]

---

[1] The prosecutor did not object to the defense attorney's argument as *de facto* testimony by counsel. See generally Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 199, 585 S.E.2d 557, 563 (2003) (observing that, in closing argument, counsel "has no right to testify in argument

Rollins should be disbelieved, Pollino's counsel also argued, because she was a criminal informant with charges pending against her. Her testimony was little more than an effort to "save her own skin," he contended.

In rebuttal argument, the prosecutor asked rhetorically: "Where is the evidence to dispute what Detective Duty and Emma Rollins testified to? It's interesting that the defense didn't mention Pig Stout. Where is Pig Stout?" Pollino's counsel objected to this statement. Sustaining the objection, the trial court reminded the jury that "the defendant has no burden to present any evidence." The court overruled the defense's request for a mistrial, finding the oral admonition sufficient to address the problem if there was one.

Immediately following the judge's cautionary instruction, the prosecutor clarified his point to the jury this way: "And that what His Honor is saying is right. It is my burden, but there's opportunity, opportunity, to present evidence. Not required to, but opportunity." The trial judge interrupted the prosecutor and, once again, repeated that "the defendant has no burden to present any evidence. The burden is on the prosecution, not the defendant." Later in his rebuttal argument, the prosecutor repeated this point: "Now, it's my burden to prove this happened. My burden. Not his burden to prove innocence. No. No. None at all. Everybody understands that. It's my burden as Commonwealth's Attorney to prove guilt beyond a reasonable doubt." In the final instructions prior to the jury's deliberations, the trial court again repeated: "There is no burden on the defendant to produce any evidence."

---

nor to assume that there is evidence which has no existence" (quoting Atl. Coast Realty Co. v. Robertson's Ex'r, 135 Va. 247, 263, 116 S.E. 476, 481 (1923)). It is one thing to argue that the incriminating evidence, whatever its weight, still leaves a residuum of reasonable doubt as to the defendant's guilt — and, in doing so, seek to negate the prosecution's case. It is quite another to affirmatively declare (absent any supporting evidence) that the defendant was not even present at the time the crime occurred, or at the location where it took place, or with the person who allegedly saw him then and there.

Finding the testimony of Detective Duty and Emma Rollins persuasive, the jury found Pollino guilty of possession of cocaine with intent to distribute in violation of Code § 18.2-248(A). Claiming that the trial court erred by not declaring a mistrial, Pollino now appeals.

## II.

We begin our analysis with settled principles of appellate review. As a general rule, a trial court can remedy a situation that would otherwise warrant a new trial by sustaining an objection and instructing the jury "to disregard the improper argument." Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 198, 585 S.E.2d 557, 563 (2003). A new trial may be necessary, however, if "'counsel persists in such argument after the admonition of the court, or if it appears that the prejudicial influence of the argument was probably not wholly removed by the court's action.'" Id. (quoting Maxey v. Hubble, 238 Va. 607, 614-15, 385 S.E.2d 593, 596 (1989), and Rinehart & Dennis Co. v. Brown, 137 Va. 670, 676, 120 S.E. 269, 271 (1923)) (brackets omitted).

We will reverse the trial court's decision to not declare a mistrial only upon determining that "a manifest probability exists that the trial court's ruling was prejudicial." Perez v. Commonwealth, 40 Va. App. 648, 654, 580 S.E.2d 507, 510 (2003) (citing Taylor v. Commonwealth, 25 Va. App. 12, 17, 486 S.E.2d 108, 110 (1997)). The party requesting a mistrial has the burden of demonstrating the requisite "probability of prejudice." Blevins v. Commonwealth, 40 Va. App. 412, 429-30, 579 S.E.2d 658, 666-67 (2003) (quoting Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998), and Robertson v. Metro. Washington Airport Auth., 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995)).

## III.

Before determining whether the failure to declare a mistrial was prejudicial error, we must decide if there was any error in the first place. Pollino contends the predicate error can be found in the trial court's inadequate responses to the prosecutor's remarks during closing arguments. These

remarks, Pollino argues, violated his Fifth Amendment privilege against self-incrimination. By not doing more to blunt the impact of these statements, Pollino asserts, the trial judge left unremedied a breach of this constitutional right. We disagree. In our opinion, the prosecutor's remarks were not improper. It was unnecessary, therefore, for the trial judge to offer any cautionary instructions. The fact that he did anyway shows a commendable abundance of caution, not a prejudicial error requiring the reversal of Pollino's conviction.

The Self-Incrimination Clause forbids imposing any penalty "on someone who exercises his core Fifth Amendment right not to be a 'witness' against himself in a 'criminal case.'" Chavez v. Martinez, 538 U.S. 760, ___, 123 S. Ct. 1994, 2002 (2003) (citing Griffin v. California, 380 U.S. 609, 614 (1965)). Under this constitutional privilege, no person can "be *compelled* to give self-incriminating testimony." McKune v. Lile, 536 U.S. 24, 35-36 (2002) (quoting United States v. Washington, 431 U.S. 181, 188 (1977)) (emphasis in original). Compulsion can be direct, like when a police officer coerces a confession, or indirect, like when a prosecutor argues to the jury that "a defendant's silence is 'evidence of *guilt*.'" Portuondo v. Agard, 529 U.S. 61, 69 (2000) (quoting Griffin, 380 U.S. at 615) (emphasis in original and citation omitted); Baxter v. Palmigiano, 425 U.S. 308, 319 (1976).[2]

Based on the circumstances of the case, the constitutional propriety of the prosecutor's comments depends on whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the [failure] of the accused to testify." Hazel v. Commonwealth, 31 Va. App. 403, 411, 524 S.E.2d 134, 138 (2000) (quoting Hines v. Commonwealth, 217 Va. 905, 907, 234 S.E.2d 262, 263 (1977), and Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955)) (bracketed word in Knowles and Hines); see also

---

[2] Not all references to a defendant's failure to testify, however, automatically violate the Fifth Amendment. "[A] reference to the defendant's failure to take the witness stand may, in context, be perfectly proper." United States v. Robinson, 485 U.S. 25, 33 n.5 (1988).

Johnson v. Commonwealth, 236 Va. 48, 50, 372 S.E.2d 134, 136 (1988); United States v. Francis, 82 F.3d 77, 78-79 (4th Cir. 1996). Thus, a comment on the defendant's failure to contradict the incriminating evidence presented by the prosecution does not offend the Fifth Amendment if, in context, the comment could be understood to refer to contradictory evidence from sources other than the defendant. See Johnson, 236 Va. at 51, 372 S.E.2d at 136 ("[A] prosecutor's comment that the Commonwealth's evidence was uncontradicted was not necessarily a reference to the defendant's failure to testify but an argument that the testimony of the witnesses who had testified was credible." (citing Washington v. Commonwealth, 216 Va. 185, 195, 217 S.E.2d 815, 824 (1975)).[3]

These same principles apply to comments noting the absence of a potentially favorable witness. While a trial court cannot instruct a jury to draw an adverse presumption from the defendant's failure to call a witness, Harris v. Commonwealth, 33 Va. App. 290, 295, 533 S.E.2d 1, 3 (2000), that failure nonetheless remains "a *circumstance*, not a presumption, for jury consideration," Russell v. Commonwealth, 216 Va. 833, 836, 223 S.E.2d 877, 879 (1976) (emphasis in original). Thus, the "failure or neglect of an accused to produce evidence within his power might be considered by the jury in connection with the other facts proved in the case." Robinson v. Commonwealth, 165 Va. 876, 880, 183 S.E. 254, 256 (1936). And because "the Sixth Amendment provides that the accused shall enjoy the right . . . to have compulsory process for

---

[3] See also Frye v. Commonwealth, 231 Va. 370, 394-95, 345 S.E.2d 267, 284 (1986) (holding that, where witness's "credibility was the subject of conflict in the evidence," prosecutor could point to the uncontradicted nature of the testimony as proof of witness's veracity); Quintana v. Commonwealth, 224 Va. 127, 146, 295 S.E.2d 643, 652 (1982) (holding no error occurs by questioning the lack of contradictory evidence where the prosecutor does not suggest that "the missing evidence should have come from [the defendant] himself or that it could come from him alone"). Prohibiting such comments "would be to make silence, the usual refuge of the guilty, still more secure." Miller v. Commonwealth, 153 Va. 890, 902, 149 S.E. 459, 462 (1929) (recognizing that bar against commenting on defendant's failure to testify was "not intended primarily to curtail any previously existing right of the prosecutor to comment upon the testimony of any other witness who had testified").

obtaining witnesses in his favor," Harris, 33 Va. App. at 294, 533 S.E.2d at 3 (quoting United States v. Scheffer, 523 U.S. 303, 326 (1998)), the absence of a potential defense witness allows the jury to infer that the witness would not have corroborated the defendant's position, Robinson, 165 Va. at 880, 183 S.E. at 256. In such circumstances, the topic presents a "legitimate subject of comment by the Commonwealth's Attorney." Harris, 33 Va. App. at 294, 533 S.E.2d at 2 (quoting Robinson, 165 Va. at 881, 183 S.E. at 256).[4]

Guided by these principles, we find no constitutional infirmity with the prosecutor's remarks during closing argument. The prosecutor pointed out the absence of any evidence "to dispute" the Commonwealth's witnesses in the same breath as his rhetorical "Where is Pig Stout?" question. After the trial court's cautionary instruction, the prosecutor rephrased his point as one merely noting Pollino's "opportunity" to present such evidence. Each of these remarks, in context, focused on the conspicuous absence of Pig Stout — a fair observation, to be sure.

If Pollino had not accompanied Stout to the parking lot and then later left with him, as Rollins testified, Stout could have taken the stand and said so. If Rollins's testimony was a complete fabrication and Stout was nowhere in the vicinity that night, he likewise could have said that as well. In either case, Stout's testimony (had it been favorable to Pollino) would have supported counsel's claim that Pollino "wasn't there on November 9th to sell drugs to Ms. Rollins or anyone else" and that "He never sold to her. He never sold to anyone." By asserting this variant

---

[4] Even if a prosecutor arguably crosses the line with his remarks, it still may be appropriate if the defendant's arguments fairly invite such an incursion. Johnson, 236 Va. at 51, 372 S.E.2d at 136; Lincoln v. Commonwealth, 217 Va. 370, 373, 228 S.E.2d 688, 690 (1976). An argument or comment "by a prosecutor, otherwise improper, may become proper under the invited error doctrine when the area has been opened to fair comment by the argument and comment of defense counsel or of a *pro se* defendant." Johnson, 236 Va. at 51, 372 S.E.2d at 136. Thus, even when a prosecutor specifically comments on the "defendant's opportunity to testify," no Fifth Amendment violation occurs if the comment "is a fair response to a claim made by defendant or his counsel . . . ." United States v. Robinson, 485 U.S. 25, 32 (1988). Because the prosecutor's remarks in this case did not violate the Fifth Amendment, we need not address whether these remarks would nonetheless be permissible under the invited-error doctrine.

of a missing-witness inference, therefore, the prosecutor did not use language that "was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the [failure] of the accused to testify." Hazel, 31 Va. App. at 411, 524 S.E.2d at 138 (citation omitted).[5]

## IV.

Finding that the prosecutor's closing argument did not violate Pollino's Fifth Amendment privilege against self-incrimination, we affirm the trial court's decision not to grant a mistrial.

Affirmed.

---

[5] Pollino has never asserted that Pig Stout does not exist or that, even if he did, no one could find him at the time of trial. Stout had been subpoenaed by the Commonwealth and appeared on the day of trial. Pollino's counsel conceded during oral argument before us that he could have put Stout on the witness stand but, for tactical reasons, chose not to. Our holding in this case does not in any way call that decision into question.