COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner
Argued at Richmond, Virginia

UNPUBLISHED

TYREE DENNIS SLATER

MEMORANDUM OPINION[*] BY
v.    Record No. 1963-12-2                    JUDGE D. ARTHUR KELSEY
                                                     NOVEMBER 12, 2013
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Steven C. McCallum, Judge

John A. Kirkland for appellant.

Lauren C. Campbell, Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief),
for appellee.


The trial court found Tyree Dennis Slater guilty of breaking and entering, destruction of

property, and petit larceny. On appeal, Slater concedes the crimes were committed but contends

the evidence did not prove he committed them. We disagree and affirm his convictions.


I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

In addition, "an appellate court's 'examination is not limited to the evidence mentioned

by a party in trial argument or by the trial court in its ruling.'" Perry v. Commonwealth, 280 Va.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "'an appellate court must consider all the evidence admitted at trial that is contained in the record.'" Id. (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586); see also Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

So viewed, the evidence established that a manager of a fast-food restaurant arrived early one morning and discovered that someone had broken into the restaurant through the drive-through window. She immediately called the police. After the officers arrived, they noticed that one of the cash registers had been stolen. They also watched a surveillance video that recorded the burglar inside the restaurant from approximately 5:45 a.m. to 5:49 a.m. that morning. The video clearly showed a black male, about five feet eight inches tall, of medium build, wearing khaki pants, a khaki button-down shirt, and a dark stocking cap. The officers put out a BOL ("be on the lookout" alert, App. at 36) at 6:48 a.m. for any person in the vicinity matching that description.

At 7:07 a.m. that morning, another officer on patrol saw Slater walking through an intersection about five blocks away from the burglarized restaurant. Slater was a black male, about five feet eight inches tall, of medium build, wearing khaki pants, a khaki button-down shirt, and a dark stocking cap. The officer arrested Slater and recovered from his front pockets a sledge hammer, a metal file, and gloves. After giving Miranda warnings, the officer told Slater that he perfectly matched the description of a suspect wanted for a very recent burglary of a fast-food restaurant. Slater replied that "he was out working." Id. at 57.

Slater presented no evidence on his own behalf. In his motion to strike and, later, in his closing argument, Slater's counsel claimed the evidence supported the hypothesis of innocence because Slater advised the arresting officer that "it was not him, and he was out working." Id. at 75. That explained, counsel argued, why Slater had "a file and a hammer." Id. at 78. He

- 2 -

"explained that away by saying he was headed to work, Your Honor." Id. Based on the possibility of misidentifying Slater merely from the video, the absence of any forensic evidence, and the purported evidence suggesting Slater "was going to work when the officer approached him," id. at 84, counsel argued that Slater should be acquitted. Sitting as factfinder, the trial court disagreed and convicted Slater. The court stated it did not "have any doubt" that Slater was the man in the surveillance video who committed the crimes. Id. at 96.

## II.

On appeal, Slater does not challenge any specific element of any of the crimes for which he was found guilty. He challenges only that he was the person who committed them, claiming the evidence suggesting otherwise was insufficient as a matter of law.

## A.

We examine a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)); see also Cavazos v. Smith, 132 S. Ct. 2, 3-4 (2011) (reaffirming the Jackson standard). Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added) (citing Jackson, 443 U.S. at 319). Thus, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929).

This deferential appellate standard "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (citation omitted); see also Sullivan, 280 Va. at 676, 701 S.E.2d at 63-64. "Thus, a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,'" Tizon v. Commonwealth, 60 Va. App. 1, 10, 723 S.E.2d 260, 264 (2012) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004)), "unless doing so would push 'into the realm of *non sequitur*,'" id. (quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231).

B.

We believe a rational factfinder could conclude beyond a reasonable doubt that Slater committed the crimes. The trial court noted that it had reviewed the surveillance video twice and commented, "These are very good videos." App. at 96. The court concluded: "[T]he individual we see in the video committing these crimes is indeed Mr. [Slater]. It's not just the physical build, the clothes, the color, but it is the way the clothes hang on the gentleman's frame." Id.

Slater claims the trial court's conclusion is inherently speculative because no forensic evidence or specific facial recognition characteristics dispositively matched the person in the videos to him. But we have never held — nor, as far as we know, has any other court — that such additional corroborative evidence is essential to a criminal case in which the sole issue is the identity of the perpetrator. To be sure, we allow factfinders to rely on the testimony of lay witnesses about the identity of persons accused of crimes captured on videotape. See, e.g., Bowman v. Commonwealth, 30 Va. App. 298, 302, 516 S.E.2d 705, 707 (1999); see also Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 13-5[c], at 744 (7th ed. 2012) ("A lay witness may offer an opinion as to the identity of a person."). It is perfectly consistent for factfinders to do the same and come to their own conclusions on identification.

We also disagree with Slater's assumption that no corroborating circumstances support the identification evidence. At trial, Slater could not explain away the uncanny coincidence that he — like the burglar in the video — was a black male, about five feet eight inches tall, of medium build, wearing khaki pants, a khaki button-down shirt, and a dark stocking cap. But he did have an explanation for why he was found that morning several blocks away possessing a sledge hammer and a metal file. He was working, Slater told the arresting officer, and he presumably needed the tools on the job, Slater's counsel later explained to the trial court.

Of course, if this were true, Slater could have called witnesses from his employment (his boss, for example) to support this story. Or he could have produced pay stubs showing that he worked for the type of company, perhaps a demolition contractor, in which one must show up to work with a sledge hammer and a metal file. Slater had a constitutional right, after all, to present this evidence as well as an opportunity to explain why circumstances prevented him from doing so. See U.S. Const. amend. VI (guaranteeing the right to "compulsory process for obtaining witnesses in his favor"); Va. Const. art. I, § 8 (recognizing the right "to call for evidence in his favor"); see also Robinson v. Commonwealth, 165 Va. 876, 880, 183 S.E. 254, 256 (1936). That Slater produced no evidence at all on this subject suggests his assertion was untrue, thereby adding an additional inculpatory inference to the case against him.[1]

---

[1] See generally Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (recognizing "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'" (quoting Wright v. West, 505 U.S. 277, 296 (1992)); Morris v. Commonwealth, 269 Va. 127, 133-34, 607 S.E.2d 110, 114 (2005); Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004); Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004).

While this principle usually arises in cases where a party's statement is delivered as testimony, the principle equally applies in cases where the party's statement was made before trial and, particularly where, as here, the party affirmatively relies upon it at trial as a hypothesis of innocence. See Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981); Taylor v. Commonwealth, 90 Va. 109, 119-20, 17 S.E. 812, 816 (1893); Taylor v. Commonwealth, 61 Va. App. 13, 31, 733 S.E.2d 129, 138 (2012); Christian v. Commonwealth,

During oral argument, Slater contended this way of thinking shifts the burden of proof from the Commonwealth to prove his guilt to him to prove his innocence. Oral Arg. at 1:10 (Oct. 9, 2013). This contention is unfounded.

The burden of proof in criminal cases always rests on the Commonwealth. But that does not mean a factfinder cannot consider a defendant's unexplained failure "to produce evidence within his power" as an incriminating circumstance. Pollino v. Commonwealth, 42 Va. App. 243, 251, 590 S.E.2d 621, 625 (2004) (quoting Robinson, 165 Va. at 880, 183 S.E. at 256); see also Russell v. Commonwealth, 216 Va. 833, 836-37, 223 S.E.2d 877, 879 (1976). "The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the [permissible inference] that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121 (1893). This inference stems from a "general rule that runs through all the doctrine of trials." 3 William Blackstone, Commentaries on the Laws of England *368 (1753); see also Taylor v. Commonwealth, 90 Va. 109, 119, 17 S.E. 812, 816 (1893); Cooper v. Commonwealth, 54 Va. App. 558, 575 n.7, 680 S.E.2d 361, 369 n.7 (2009); 1 Simon Greenleaf, A Treatise on the Law of Evidence § 195b, at 327 (16th ed. 1899).

### III.

The evidence in this case amply supports the rationality of the trial court's factual finding that Slater was the person on the surveillance video committing the crimes for which he was convicted. We thus affirm.

Affirmed.

---

59 Va. App. 603, 613, 721 S.E.2d 809, 814 (2012); Rollston v. Commonwealth, 11 Va. App. 535, 547-48, 399 S.E.2d 823, 830-31 (1991).