COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Senior Judge Clements

ALBERT DAVIS WILLIAMS

v.      Record No. 1395-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MAY 23, 2023

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

(Christian A. Brashear, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Leah A. Darron, Senior
Assistant Attorney General, on brief), for appellee.


The Culpeper County Circuit Court convicted Albert Davis Williams of robbery, in

violation of Code § 18.2-58, and sentenced him to 32 years in prison, with 20 years suspended.

Williams contends that the trial court erred in finding the evidence sufficient to support his

conviction.[1]  He also alleges that the trial court abused its discretion in imposing a 12-year active

sentence.  After examining the briefs and record, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

The record supports appellant's conviction, the trial court did not abuse its discretion in sentencing

Williams, and we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Williams presents seven assignments of error on appeal.  The first six assignments of error address the credibility of the witnesses, the weight afforded to the evidence, and the overall sufficiency of the evidence.  The seventh assignment of error relates to Williams's sentence. We, therefore, consolidate the first six assignments of error and address them as one under the general topic of sufficiency of the evidence.

BACKGROUND

On February 10, 2020, Sharneda Glascoe was working the night shift alone at the E&C Shell gas station and convenience store in Culpeper County. At approximately 2:00 a.m. two men wearing hooded jackets entered the store and approached Glascoe at the cash register. One of the men stood to the side while the other male said, "don't move" and instructed Glascoe to open the drawer to the cash register. The man told Glascoe to keep her eyes closed as he took the cash out of the drawer. He then told her to wait several minutes before calling the police and explained, "this ain't about you." The incident was captured on the store's video-surveillance system. The video, which also recorded audio, was played at trial. During the incident, Glascoe held her hands over her face but peered through her fingers and was able to see the men. Because the man's hood was laced tightly about his face, Glascoe observed his appearance only from the nose down. However, as he retrieved the money from the cash register, his hood loosened and she "could see him perfectly." Glascoe watched the surveillance video at trial and identified the man who robbed her as Williams.[2]

Michael Jewell was the regional manager for E&C Mid-Atlantic Ventures, which managed the Shell station. Jewell testified that $376 was stolen from the cash register.

Barbara Amos was Williams's assigned probation officer and began supervising him in September 2019. Before the robbery, Amos met with Williams three times in person and spoke with him twice by telephone. Amos described Williams's voice as "fairly raspy." Amos viewed the video and listened to the audio and recognized Williams's voice. She then notified the police. At trial, Amos again viewed the video and identified Williams by his voice. On cross-examination, Amos admitted she is not a voice identification expert and she conceded that Williams reported for his last office appointment on February 6, 2020, using a walking device to support his back.

_____

[2] There was no objection to Glascoe's in-court identification of Williams as her assailant.

After the Commonwealth rested its case, Williams moved to strike the evidence, arguing that there was no evidence that the money was taken by force, threat, or violence. The trial court denied the motion to strike.

Williams testified in his defense. Williams denied going to the Shell station on the night of the offense and stated that he was with a female named Tonya all night. He did not know Tonya's last name. Williams noted that he had back surgery in July 2019 and used a walker while on probation. Williams testified that he could not walk without a walker and explained that at the time of the robbery he would not have been able to move quickly or jump on the counter. The trial court admitted Williams's medical records from the University of Virginia at trial. The medical records showed that Williams underwent surgery in July 2019 and that his pain medications were discontinued before he left the hospital. At that time, his motor functions were intact, and all muscle groups were reported "five of five" except his left ankle dorsiflexor, which was "four of five." Williams conceded he had a prior criminal record that included 15 felonies.

Following the presentation of the evidence, Williams renewed his motion to strike and added that the evidence failed to prove he was the perpetrator of the offense. Specifically, Williams argued that Glascoe did not see his entire face during the incident and that Amos identified him solely by his voice after only a few interactions with him. He also stressed the fact that no physical evidence was recovered proving his guilt and that the medical records showed he was physically incapable of committing the offense.

The trial court found that "[t]his case was really a question of the credibility of the witnesses." The court explained that it had "watched each witness testify very carefully," noting specifically "their appearance, their ability to recall the things to which they testified to, any bias or prejudice that they may have, [and] any impeachment of their . . . testimony." The trial court emphasized that it had studied the witnesses "very, very carefully." The trial court concluded that

- 3 -

Glascoe and Amos were more credible, discredited Williams's testimony regarding his medical inability to commit the offense and his alibi, and found Williams guilty of robbery. At a subsequent sentencing hearing, the trial court considered Williams's extensive criminal history, his age, his medical condition, a presentence investigation report, and a victim impact statement before imposing a sentence of 32 years in prison, with 20 years suspended. Williams noted this appeal.

ANALYSIS

A. The evidence is sufficient to support Williams's conviction for robbery.

Williams asserts that the evidence was insufficient to prove he was the perpetrator of the offense. He argues that the trial court erred in finding Glascoe and Amos credible and maintains that the court erred in rejecting his alibi defense and his evidence showing his physical incapacity to commit the offense. Williams's appeal is wholly without merit as there is ample evidence to support his conviction. Bound by our standard of review, we must reject Williams's assertions.

"[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). We therefore view the evidence "in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Farmer v. Commonwealth*, 61 Va. App. 402, 416 (2013) (quoting *Commonwealth v. McNeal*, 282 Va. 16, 20 (2011)). We also must discard any of appellant's conflicting evidence, "and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

- 4 -

reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "In a bench trial, the trial judge's 'major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004)). Witness testimony "is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "In other words, this Court cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

Glascoe testified that during the robbery, she held her hands over her face and peered through her fingers as Williams took the money from the cash register. As he did so his hood loosened, revealing his face perfectly to her. Glascoe viewed the surveillance video at trial and identified Williams in court as the perpetrator of the offense. She had "no doubt" that the man that took the money from the register was Williams. Amos corroborated Glascoe's in-court identification of Williams as the perpetrator. Amos was Williams's probation officer and had met with him in person three times and spoken with him by telephone twice. She was familiar with Williams's voice and described it as distinctive and "fairly raspy." After seeing the surveillance

video, Amos recognized Williams's voice. She likewise viewed the surveillance video in court and then identified Williams unequivocally as the person in the video.

There is nothing inherently incredible about the respective testimony of Amos and Glascoe. They both had the opportunity to observe Williams in person and to hear his voice, Amos on more than one occasion. They both also watched the surveillance video as it was played in the very presence of Williams while sitting in court. They then both identified Williams as the man in the video. Moreover, the trial court expressly stated that it had considered the appearance of the witnesses, their ability to recall things, any bias they might have, and any impeachment of their testimony. The trial court studied the witnesses "very, very carefully" and expressly noted that Amos was an unbiased and neutral witness bearing no "ill will or grudge" against Williams. We cannot conclude from this record that the trial court's findings as to the reliability of Amos's and Glascoe's identifications of Williams as the perpetrator of the offense are plainly wrong or without evidence to support them.

It is true that "[a]t trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). However, we review the fact finder's determination regarding the identity of the perpetrator considering "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)). Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Indeed, "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What

weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (alterations in original) (quoting *Haskins*, 44 Va. App. at 9).

Here, the trial court rejected Williams's credibility as it relates to his assertion that he was with Tonya on the night of the offense, as well as his assertion that he was physically incapable of committing the offense. This rejection of Williams's hypotheses of innocence is not plainly wrong because it is supported by the record. Williams did not know Tonya's last name, and Tonya was not in court to verify his alibi. The "failure or neglect of an accused to produce evidence within his power might be considered by the [factfinder] in connection with the other facts proved in the case." *Pollino v. Commonwealth*, 42 Va. App. 243, 251 (2004) (quoting *Robinson v. Commonwealth*, 165 Va. 876, 880 (1936)). Amos testified that Williams only used a cane or walker during his *last* meeting with her on February 6, 2020, belying Williams's assertion that he began using a walker in December 2019. Moreover, the medical records admitted by the court showed that Williams underwent surgery in July 2019 and that his pain medications were discontinued before he left the hospital. At that time, his motor functions were intact, and most muscle groups were reported "five of five." Williams did not present any medical proof supporting his assertion that his condition had since deteriorated. Since the trial court's factual findings and its resolution of the credibility of the witnesses are supported by the record and not plainly wrong, we leave them undisturbed.

Accordingly, we find that the evidence was sufficient to support Williams's conviction for robbery.

B. The trial court did not abuse its discretion in sentencing Williams to a 12-year active sentence.

Williams also asserts that the trial court abused its discretion by imposing a 12-year active sentence "given the lack of any injury or violence in said offense." We disagree.

"We review [a] trial court's sentence for abuse of discretion." *Johnson v. Commonwealth*, 63 Va. App. 175, 181 (2014) (quoting *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011)). A court abuses its discretion

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). Accordingly, we may reverse a trial court's sentencing decision "only upon 'clear evidence that [the decision] was not judicially sound[.]'" *DeLuca v. Commonwealth*, 73 Va. App. 567, 575 (2021) (alterations in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)).

"Given this deferential standard of review, we will not interfere with the sentence so long as it was within the range set by the legislature for the particular crime of which the defendant was convicted." *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (quoting *Scott*, 58 Va. App. at 46). That is, where the argument on appeal "is simply a challenge to the duration of imprisonment," an appellate court will only evaluate whether the sentence exceeded the maximum penalty prescribed by the sentencing statute. *Minh Duy Du*, 292 Va. at 564. The trial court's sentencing decision "will not be disturbed as long as it stays within" the range of punishment set by the legislature "and is not influenced by any mistake of law." *Id.* at 563-64 (quoting *Lawlor*, 285 Va. at 212-13). Moreover, although the trial court must "review and consider the suitability of the applicable discretionary sentencing guidelines," Code § 19.2-298.01, it is well settled that the

Virginia criminal sentencing guidelines are "discretionary, rather than mandatory." *West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007).

Williams does not contend that his sentence exceeded the maximum allowed by statute.[3] He merely complains that the trial court gave an "overly-great emphasis" to his criminal record and did not consider his age or his poor medical condition in imposing a 12-year active sentence. This assignment of error is wholly without merit. In fashioning its sentence, the trial court first considered Williams's lengthy criminal history. Indeed, Williams had a juvenile record beginning at the age of 16 with 8 juvenile adjudications, 7 prior sentencing events, 16 prior felony convictions (including a prior robbery), and 28 misdemeanor convictions. However, the trial court also clearly considered other important factors. The court admitted and considered the presentence investigation report and Glascoe's victim witness impact statement, which the trial court found to be "chilling." The trial court additionally noted the fact that "there was no weapon involved in this," and, contrary to Williams's assertion, expressly considered his age and health as factors that "weigh[ed] in [his] favor." We cannot therefore conclude that the trial court abused its discretion in sentencing Williams to 32 years, with 20 years suspended. The sentence was within the statutory range set by the legislature, and we further find that the trial court's sentence was reasoned and measured on the facts of this case. The trial court did not abuse its discretion and, therefore, we affirm the sentence.

## CONCLUSION

With all credibility issues resolved in favor of the Commonwealth, the evidence sufficiently proved that Williams committed the robbery. Moreover, the trial court did not abuse its discretion by imposing an active 12-year prison sentence. Thus, we affirm the trial court's judgment.

*Affirmed.*

---

[3] At the time of the offense in February 2020, the statutory range for robbery was "life or any term not less than five years." Former Code § 18.2-58.