COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges AtLee, Friedman and Callins
Argued by videoconference


BRANDON TYLER WEBB

                                                MEMORANDUM OPINION* BY
v.        Record No. 1921-24-3                  JUDGE RICHARD Y. ATLEE, JR.
                                                    FEBRUARY 3, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LEE COUNTY
Tammy S. McElyea, Judge

Jennifer M. Deel (The Salyer Law Firm, PLLC, on briefs), for
appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Brandon Tyler Webb of malicious wounding

and abduction.  Webb raises multiple issues on appeal.  First, Webb argues that the trial court erred

by admitting evidence that he fled from police and by granting a jury instruction regarding flight.

Second, he contends that the abduction was incidental to the malicious wounding rather than a

separate abduction.  Next, he argues that the evidence was insufficient to prove that he acted with

malice and the requisite intent to commit malicious wounding.  Finally, he contends that the trial

court erred by denying his motion for a mistrial based on an improper remark made during the

Commonwealth's closing argument.  For the following reasons, we disagree and affirm the decision

of the trial court.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

I. Background

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth," the prevailing party below. *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

On the afternoon of September 25, 2019, Webb picked up his girlfriend, Bailey Smith, after her shift at a restaurant in Lee County. Webb brought along the couple's fifteen-month-old child. As Smith got in the car, she noticed that Webb was "acting angry." Webb then drove to a nearby gas station. When Webb got out and stepped away from the car, Smith got out and attempted to get into the driver's seat. Webb noticed and quickly returned to the vehicle, at which point Smith returned to the passenger seat.

Webb got back into the car and pulled out of the parking lot "going pretty fast." Webb then began accusing Smith of infidelity, claiming that "[h]e had found stuff in [her] phone." While driving "extremely fast," Webb repeatedly demanded that Smith admit that she had been unfaithful. Smith denied Webb's accusations and asked Webb to stop the car so that she and their child could get out and call her sister to pick them up. Webb refused to let Smith out of the car, telling her "[t]hat [she] needed to answer his questions, and that [she] wasn't going to leave until [she] did."

When Webb slowed down to drive over some railroad tracks, Smith opened the car door in an attempt to get Webb to stop the car. Instead of stopping, Webb sped up, causing the door to swing shut. Webb repeated "over and over" to Smith that she was not leaving until she admitted that she had been unfaithful to him. Webb continued driving "extremely fast" until he pulled the car into an empty gravel lot locally referred to as the "coal yard."[2] For nearly two minutes, Webb demanded that Smith confess to her infidelity and told her that she was not going

---

[2] The coal yard was approximately a three-minute drive from the gas station.

to leave until she did.  Smith again denied Webb's accusations, at which point Webb turned violent.  Webb began to "poke at" Smith and smack her in the face.  Smith repeatedly attempted to open her door, and Webb locked it each time to prevent her from exiting the car.

Webb then got out of the car, walked around to open the passenger door, and struck Smith near the eye with a closed fist.  Smith began to bleed profusely from the initial punch, which affected her ability to see.  Smith put her foot up in defense when Webb moved to hit her again, but Webb grabbed her foot and dragged her out of the car.  Webb repeatedly struck Smith in the back of the head while she was on the ground.  During the assault, Webb told Smith "that [she] was going to admit [to the infidelity], or that he was going to kill [her]."

Webb eventually dragged Smith, who was crying and begging Webb to stop, back into the car.  Webb got back into the driver's seat and drove the car up a remote access road off of the coal yard to a spot that was not visible from the main road.  Webb continued threatening to kill Smith if she did not admit to being unfaithful.  When Smith opened the passenger door to escape, Webb got out of the car and shut it.  Smith then climbed over the center console, got into the driver's seat, and "stomped the gas," causing the car to reverse, lurch, hit the ground, and roll into a bush.  Smith attempted to press on the gas again, but the car would not move because the impact had broken an axle in the car.  Webb started hitting Smith again.

At that point, Makayla Taylor arrived in her car and called Webb's name.  Taylor, who is Webb's second cousin, had driven past the coal yard several minutes prior while driving someone home and witnessed Webb and Smith arguing.  When Taylor drove by again, however, she observed Webb hitting Smith in her face and dragging her by her hair into their car.  Once Taylor called Webb's name, Webb ran up to Taylor's car and said that Smith was cheating on him "and that he was going to kill the stupid bitch."  Webb begged Taylor not to call the police.

- 3 -

While Webb spoke to Taylor, Smith climbed into their vehicle and retrieved their child. Smith went to Taylor's car and handed Taylor the child through the window. As Smith walked around Taylor's car to get in, Webb followed Smith and begged her not to call the police. Once Smith was in Taylor's car, Webb leaned through one of the windows and again threatened to kill Smith and told her she was not leaving. Taylor then saw another car approach and flagged them down.

The other vehicle was driven by Jessica Snowden, who is another one of Webb's distant cousins. Snowden saw Webb attempting to get Smith out of Taylor's vehicle and threatening to kill Smith. Smith asked Snowden to call the police and Snowden agreed. As Snowden drove away, with Taylor pulling out behind her, Webb attempted to chase her vehicle on foot. Snowden drove to a nearby school and asked the secretary to call the police.

Taylor drove to her home with Smith and the child, where Smith also called the police. Smith was taken to a hospital where she was given five stitches for the gash above her eye. Smith also suffered extensive bruising on her face and body; knots on her head from where Webb pulled her hair; gashes on her knees from the gravel; markings on her neck from where Webb had pulled her by her shirt; and cuts on the bottom of her feet, between her toes, and on her elbows.

When police arrived at the coal yard to investigate the scene of the incident, Webb was no longer there. That evening, police went to Webb's father's home to serve Webb with an arrest warrant, but they were unsuccessful. Police returned to Webb's father's home the next evening. As they approached the home, Webb exited through a window and began running behind the house. After a brief pursuit on foot, police apprehended and arrested Webb.

Subsequently, a grand jury indicted Webb on the charges of malicious wounding, in violation of Code § 18.2-51, and abduction, in violation of Code § 18.2-47. Prior to trial, Webb

moved to exclude any evidence of his flight from police on the day he was arrested. Webb argued that there was an insufficient nexus to connect the alleged flight and the charged offenses. The trial court denied the motion after hearing argument.

After the Commonwealth rested its case, Webb made a motion to strike. First, Webb moved to strike the abduction charge, arguing that any alleged act of abduction was incidental to the malicious wounding. Second, Webb moved to strike the malicious wounding charge, arguing that the evidence was insufficient to prove that he acted with malice or the required intent. The trial court denied both motions. Webb renewed his motions to strike at the conclusion of the evidence, which the trial court again denied.

During closing arguments, counsel for the Commonwealth stated: "I want you to think about what might have happened to [Smith] if [Taylor] and [Snowden] had not stopped to help. I want you to think about that because that's what could happen the next time." Webb promptly objected to the remark, arguing that Commonwealth was "trying to guilt the jury improperly," and moved for a mistrial. The trial court sustained the objection to the statement, but it denied Webb's motion for a mistrial. The trial court found that the remark was unintentional and could be cured by a cautionary instruction. The trial court then instructed the jury to disregard the improper remark.

When the trial court reviewed the proposed jury instructions, Webb objected to the Commonwealth's proposed instruction on the evidence of flight. The trial court overruled the objection. Ultimately, the jury convicted Webb of malicious wounding and abduction. Webb now appeals.

II. ANALYSIS

A. *The trial court did not err by admitting evidence of Webb's flight and granting a jury instruction on flight.*

Webb contends that the trial court erred in admitting evidence that he fled from law enforcement on the day of his arrest and by instructing the jury on flight.[3] We see no error in the trial court's action.

"It is well established that 'the admissibility of evidence is within the discretion of the trial court' and an appellate court will not reject the decision of the trial court unless it finds an abuse of discretion." *Hicks v. Commonwealth*, 60 Va. App. 237, 244 (2012) (quoting *Midkiff v. Commonwealth*, 280 Va. 216, 219 (2010)). "This Court reviews the trial court's decisions in giving or denying jury instructions under an abuse of discretion standard." *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019).

"Flight following the commission of a crime is evidence of guilt, and the jury may be so instructed." *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996)). Evidence of flight is admissible, even if it "occurred days, or even months, after a crime," so long as the flight "tends to show a consciousness of guilt." *Id.* (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 103 (1991)). "[I]n order to a show a 'consciousness of guilt,' a nexus must exist between the flight and the alleged offense." *Id.* Put differently, "[t]he evidence must establish [that the accused] had some knowledge that he might be a suspect in the [offense]." *Id.*

---

[3] Webb also argues that the trial court improperly admitted evidence regarding his flight from the scene of the incident. We decline to consider this argument, however, because Webb did not object to the admission of the evidence below. Webb only objected to the admission of evidence of flight on the day of his arrest. And "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

Here, Webb argues that the evidence was insufficient to show he had any knowledge that he was a suspect in this offense when police arrived at his father's home to serve the arrest warrant. We find this argument unpersuasive. It is abundantly clear from the record that Webb anticipated the involvement of police following his altercation with Smith. Webb begged both witnesses not to call the police at the scene of the incident. When Snowden indicated that she would be calling 911, Webb again urged her not to and chased her car on foot as she drove away. Given Webb's behavior, and given the nature of the offense, Webb "almost certainly knew that the crime would become known to police." *Schlimme v. Commonwealth*, 16 Va. App. 15, 20 (1993) (distinguishing nexus analysis in cases where the offense may have never been discovered by law enforcement). Thus, we reject Webb's contention that the evidence was insufficient to establish a consciousness of guilt.

We similarly reject Webb's assertion that the trial court improperly instructed the jury regarding the evidence of flight. It is undisputed that the flight instruction was a correct statement of law. *See Fahringer*, 70 Va. App. at 211 ("A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988))). And where an instruction is an otherwise correct statement of law, it is proper so long as it is "supported by . . . more than a scintilla of evidence." *Cheripka v. Commonwealth*, 78 Va. App. 480, 503 (2023) (quoting *Watson v. Commonwealth*, 298 Va. 197, 207 (2019)).

The record contains more than a scintilla of evidence from which the jury could have concluded that Webb attempted to flee from police at his father's home "to avoid detection, apprehension, arrest, or prosecution." *Id.* As we have already concluded, Webb had sufficient knowledge that he was a suspect in the crimes. With that knowledge, Webb attempted to exit his

father's home through a window and flee through the backyard when police arrived to arrest Webb. The record thus contains evidence sufficient to support the flight instruction. Accordingly, the trial court did not abuse its discretion by admitting evidence of Webb's flight from his father's home and by instructing the jury accordingly.

B. *The abduction was not merely incidental to the malicious wounding.*

Webb argues that the trial court erred in denying his motion to strike the abduction charge. He contends that the abduction was merely incidental to the malicious wounding. We disagree.

"Whether an abduction is merely incidental to another crime is a question of law." *Hoyt v. Commonwealth*, 44 Va. App. 489, 496 n.4 (2004). "However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the . . . facts of each case." *Id.* Thus, "[w]e defer to the trial court's findings of . . . fact, but we review *de novo* the trial court's application of those facts to the law." *Id.*

It is well-settled that "the General Assembly did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense." *Brown v. Commonwealth*, 230 Va. 310, 314 (1985). Instead, an accused may only be convicted of abduction and another crime involving the restraint of the victim so long as the abduction is "separate and apart from, and not merely incidental to," the restraint employed in the other crime. *Id.* And "[t]he only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor v. Commonwealth*, 285 Va. 187, 225 (2013).

Applying the *Lawlor* test, we reject Webb's argument that the abduction was merely incidental to the malicious wounding. Webb transported Smith to an empty parking lot and

refused to allow her to get out despite her multiple attempts and requests to get out of the car. Thus, Webb's asportation and detention of Smith spanned several minutes before he even began to commit the malicious wounding. He then also prevented her from exiting the vehicle as he began to commit the malicious wounding. After he had already struck Smith several times, and completed the malicious wounding, Webb forced her back into the vehicle and drove further up an access road to continue his attack in an even more remote location. Thus, it was not error for the trial court to conclude that Webb's asportation and detention of Smith "exceeded the minimum necessary to complete the required elements of" malicious wounding. *Id.*

Applying the *Hoyt* factors yields the same conclusion.[4] Under *Hoyt*, factors to determine whether an abduction is incidental to another offense are:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Swezey v. Commonwealth*, 77 Va. App. 809, 815 (2023) (quoting *Hoyt*, 44 Va. App. at 494).

From the moment Webb refused Smith's request to let her out of the car and until Smith was able to leave in the car of one of the witnesses, the duration of the abduction was just under 15 minutes. And although there was some overlap between the offenses, Webb detained Smith for nearly five minutes before he committed the malicious wounding. Webb's asportation of Smith to a more secluded location "substantially increased the risk of harm to [Smith] by decreasing the possibility of detecting [Webb's] criminal activity." *Coram v. Commonwealth*, 3 Va. App. 623, 626 (1987). "Moreover, asportation to decrease the possibility of detection is not

---

[4] Webb's position that we must apply the *Hoyt* factors is misguided. When the detention at issue is an intrinsic element of the other crime, as it is with assault, "the *Lawlor* test is mandatory and consideration of the *Hoyt* factors is permissive." *Swezey v. Commonwealth*, 77 Va. App. 809, 817 (2023).

an act inherent in" the commission of malicious wounding. *Id.* Thus, the abduction was not merely incidental to the malicious wounding. Accordingly, the trial court did not err in denying Webb's motion to strike the abduction charge.

C. *The evidence was sufficient to convict Webb of malicious wounding.*

Webb argues that the trial court erred in denying his motion to strike the malicious wounding charge. Specifically, Webb contends that the evidence was insufficient to prove malice and an intent to maim, disfigure, disable, or kill. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Instead, we ask only 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Secret*, 296 Va. at 228).

"To support a conviction for malicious wounding under Code § 18.2-51, the Commonwealth must prove that the defendant inflicted the victim's injuries 'maliciously and with the intent to maim, disfigure, disable or kill.'" *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 483 (1991) (en banc)). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Id.* (quoting *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993)). It "is evidenced either when the accused acted with a sedate, deliberated mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." *Id.*

(quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). "Whether malice existed is a question for the fact finder." *Id.*

Webb argues that the evidence shows that he acted in the heat of passion rather than with malice. Webb contends that he became enraged after Smith continuously denied Webb's accusations of infidelity.

It is well-settled that "[m]alice and heat of passion are mutually exclusive." *Id.* (quoting *Barrett v. Commonwealth*, 231 Va. 102, 206 (1986)). "'Heat of passion' refers to the *furor brevis* which renders a man deaf to the voice of reason." *Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998). "To establish the heat of passion defense, an accused must prove he committed the crime with 'passion' and upon 'reasonable provocation.'" *Id.* (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 643 (1997)). "In order to determine whether the accused acted in the heat of passion, it is necessary to consider the nature and degree of provocation as well as the manner in which it was resisted." *Robertson*, 31 Va. App. at 823 (quoting *Miller v. Commonwealth*, 5 Va. App. 22, 25 (1987)). "If all of the evidence demonstrates that the accused reflected or deliberated, that his passion cooled, or that there was reasonable time or opportunity for cooling, then the wounding is attributable to malice and not heat of passion." *Miller*, 5 Va. App. at 25.

Here, Webb's heat of passion theory is untenable. There is no legal authority that allows us to conclude that one partner's denials to another partner's accusations of infidelity create reasonable provocation for the purposes of a heat of passion defense.[5] Indeed, this Court has held that "words alone, however insulting or contemptuous, are *never* a sufficient provocation" to establish heat of passion. *Caudill*, 27 Va. App. at 85 (quoting *Canipe*, 25 Va. App. at 643).

---

[5] Webb's suspicions of infidelity arose merely from something that Webb claimed to have seen on Smith's cell phone. The record is absent of any detail regarding what Webb purports to have seen on the phone.

Thus, the evidence fails to demonstrate that Webb acted upon any reasonable provocation when he attacked Smith.

Instead, the record demonstrates that Webb "committed a purposeful and cruel act without any or without great provocation." *Robertson*, 31 Va. App. at 823 (quoting *Branch*, 14 Va. App. at 841). Webb dragged Smith from the vehicle and began to repeatedly strike her with a closed fist. With his initial punch, Webb created a cut on Smith's face that immediately bled profusely and later required stitches. Accordingly, the evidence is sufficient to establish that Webb acted with malice.

Webb next argues that the evidence was insufficient to prove that he acted with the requisite intent to main, disfigure, disable, or kill Smith. He contends that striking someone with a fist alone cannot prove the intent required under Code § 18.2-51. Webb relies on *Lee v. Commonwealth*, 135 Va. 572 (1923), where our Supreme Court held that "[i]f [an assailant] only used his fist, then there would be no presumption from that fact alone that he intended to permanently disfigure his adversary[.]" *Id.* at 578. But Webb fails to acknowledge that "an assault with a bare fist may be attended with such circumstances of violence and brutality that an intent to kill may be presumed." *Fletcher v. Commonwealth*, 209 Va. 636, 640 (1969).

Here, the circumstances demonstrated violence and brutality sufficient to presume that Webb acted with the required intent. Webb's attack was not reasonably provoked, and he inflicted injuries to Smith severe enough to require stitches. *See Williams v. Commonwealth*, 13 Va. App. 393, 394-95 (1991) (presuming an intent to kill where the accused used only his fists based on circumstances such as the lack of provocation and severity of the injuries inflicted). Webb weighed over 60 pounds more than Smith at the time of the attack.[6] *See Campbell*, 12

---

[6] Webb weighed approximately 170 pounds and Smith weighed approximately 109 pounds.

Va. App. at 485 (considering the disparity in strength of the accused and the victim when determining intent for malicious wounding). Beyond that, Webb threatened to kill Smith several times, both to Smith and to the witnesses. Thus, Webb's attack of Smith was attended by such violence and brutality that a reasonable factfinder could have determined Webb acted with the intent required by the statute. In sum, the evidence was sufficient to prove that Webb acted maliciously and with the intent required by Code § 18.2-51. Accordingly, the trial court did not err in denying his motion to strike.

D. *The trial court properly denied Webb's motion for a mistrial.*

"The decision whether to grant a motion for a mistrial is a matter submitted to the trial court's sound discretion." *Lowe v. Cunningham*, 268 Va. 268, 272 (2004). "We will reverse the trial court's decision to not declare a mistrial only upon determining that 'a manifest probability exists that the trial court's ruling was prejudicial.'" *Pollino v. Commonwealth*, 42 Va. App. 243, 248 (2004) (quoting *Perez v. Commonwealth*, 40 Va. App. 648, 654 (2003)). "The party requesting a mistrial has the burden of demonstrating the requisite 'probability of prejudice.'" *Id.* (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 429-30 (2003)).

"As a general rule, a trial court can remedy a situation that would otherwise warrant a new trial," such as counsel making an improper remark in the presence of the jury, "by sustaining an objection and instructing the jury 'to disregard the improper argument.'" *Id.* (quoting *Velocity Express Mid-Atl., Inc. v. Hugen*, 266 Va. 188, 198 (2003)). "This broad discretionary power reflects in part the principle that a jury is presumed to have followed a timely and explicit cautionary instruction directing it to disregard an improper remark or question by counsel." *Lowe*, 268 Va. at 272. "A new trial may be necessary, however, if . . . 'it appears that the prejudicial influence of the [remark] was probably not wholly removed by the court's action.'" *Pollino*, 42 Va. App. at 248 (quoting *Hugen*, 266 Va. at 198).

- 13 -

We disagree with Webb's contention that the cautionary instruction was insufficient to cure the prejudice of the Commonwealth's improper remark. The trial court sustained the objection to the remark and promptly instructed the jury to disregard it. In denying Webb's motion for a mistrial, the trial court found that the remark was unintentional and determined that it did not "rise[] to a level . . . that couldn't be cured by an instruction." We cannot say that this "determination was wrong as a matter of law" and, thus, we will not disturb it. *Green v. Commonwealth*, 266 Va. 81, 102 (2003). Accordingly, we conclude that the trial court did not abuse its discretion by denying Webb's motion for a mistrial.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*